**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CESAR MANUEL CARDOSO MATOS DE PACO, | : : : | CIVIL ACTION NO. 14-5017 (MLC) |
| Plaintiff, | : : | **MEMORANDUM OPINION** |
| v. | : : | |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, | : : : | |
| Defendant. | : : | |

**COOPER, District Judge:**

Plaintiff, Cesar Manuel Cardoso Matos De Paco ("Plaintiff"), commenced this action against the United States Customs and Border Protection ("CBP"), seeking certain information relevant to the revocation of his membership in the Global Trusted Traveler Program ("global traveler program") pursuant to the Freedom of Information Act ("FOIA"). (See generally dkt. 7.)[1]

CBP moves for summary judgment as to all claims asserted against it. (See generally dkt. 11.) CBP asserts that it "made a good faith effort to search for the records requested," its "methods were reasonably expected to produce the information requested," and the redacted information properly falls within one or more of FOIA's statutory exemptions. (See dkt. 11-7

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by referring to the docket entry numbers by the designation of "dkt." Pincites reference ECF pagination.

at 13–14.) Plaintiff has not opposed the motion. For the reasons stated below, the Court will grant Defendant's motion for summary judgment.

## BACKGROUND

On January 17, 2014, a CBP employee at Newark Liberty International Airport informed Plaintiff that his membership in the global traveler program had been revoked. (See dkt. 7 at 3.) On January 20, 2014, Plaintiff inquired by way of letter as to the reason for his membership revocation. (See id. at 3–4.) On February 3, 2014, a supervisor of the Global Entry Enrollment System informed Plaintiff that his membership was revoked because he did not meet the program eligibility requirements. (See id. at 4.) Plaintiff appealed from this decision, which was affirmed by the CBP Ombudsman on April 21, 2014. (See id.)

On June 11, 2014, Plaintiff submitted a FOIA request seeking a copy of his "complete alien file" and all records relating to the basis of the revocation of his membership in the global traveler program. (See id. at 5; dkt. 11-7 at 7.) CBP responded to the FOIA request on November 13, 2014 and provided Plaintiff with eleven pages of redacted records relating to the revocation of Plaintiff's membership in the global traveler program. (See dkt. 7 at 6; dkt. 11-7 at 7.)[2] The records were redacted pursuant to 5 U.S.C. §§ 552(b)(6) ("Exemption 6"), (b)(7)(C) ("Exemption 7(C)"), and (b)(7)(E) ("Exemption 7(E)"), which permit the redaction of records under certain conditions discussed below. (See dkt. 11-7 at 7.)

---

[2] These redacted records originate from CBP's Global Enrollment System database, which is the system "used to adjudicate applications to enter the United States by a number of trusted traveler programs administered by CBP." (Dkt. 11-2 at 3.) The redacted records included a biographic summary of Plaintiff, request list (i.e., Plaintiff's request for membership in global traveler program), comment list, and risk assessment worksheet. (See id. at 4.) The redacted records did not include Plaintiff's "complete alien file" because CBP does not maintain these records. (See dkt. 11-7 at 7.)

Plaintiff appealed from CBP's response through the agency's administrative appeals process. (See id. at 7–8.) Plaintiff argued that the redactions made it difficult to discern "the factual or other basis for the revocation of [his] Global Entry Program membership and CBP's unilateral and unjustified denial of his subsequent reapplication for same." (See dkt. 11-5 at 2.) CBP denied Plaintiff's appeal, explaining that the redactions were properly applied because law enforcement employees have a privacy right to have their names withheld and because CBP can withhold identifying information about its terminals and investigatory techniques to prevent the risk of circumvention of the law. (See dkt. 11-6 at 4–5.)

Plaintiff filed an amended complaint alleging a violation of FOIA for failure to disclose agency records pursuant to his FOIA request. (See dkt. 7 at 1.) The Court now resolves Defendant's motion for summary judgment without oral argument pursuant to Local Civil Rule 78.1(b).

## DISCUSSION

I. **APPLICABLE LAW**

   A. **Legal Standard: Summary Judgment**

Federal Rule of Civil Procedure 56 provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The non-movant must then present evidence that raises a genuine dispute of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v.

New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted).  This evidence may include "citing to particular parts of materials in the record" or a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)–(B).

A movant is not automatically entitled to summary judgment because the non-movant does not oppose the motion.  See Anchorage Assocs. v. V.I. Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  "If the nonmoving party fails to oppose the motion [for summary judgment] by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Kadetsky v. Egg Harbor Twp. Bd. of Educ., 164 F.Supp.2d 425, 431–32 (D.N.J. 2001) (internal quotation and citation omitted).  The Court may then only grant the unopposed motion if appropriate.  See Fed.R.Civ.P. 56(e).  An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law.  See Anchorage Assocs., 922 F.2d at 175.

    **B.**    **Legal Standard: Freedom of Information Act**

FOIA requires government agencies to make their records available to members of the public upon request.  See 5 U.S.C. § 552.  Agencies are required to produce the requested records unless one of nine specific exemptions under FOIA applies.  See 5 U.S.C. § 552(b).  There is a strong presumption in favor of disclosure because FOIA's purpose is "to facilitate public access to Government documents." Hecht v. U.S. Agency for Int'l Dev., No. 95-263,

4

1996 WL 33502232, at *5 (D.Del. Dec. 18, 1996). Here, CBP claims that portions of the requested documents are properly redacted under Exemptions 6, 7(C), and 7(E).

If an agency believes one of FOIA's nine statutory exemptions applies, then "[t]he agency bears the burden of justifying the withholding, and the [district] court reviews the agency claims of exemption *de novo*." OSHA Data/CIH, Inc. v. U.S. Dep't of Labor, 220 F.3d 153, 160 (3d Cir. 2000). An agency can meet its burden by filing an affidavit describing the material withheld and explaining why that material falls under a particular exemption. McDonnell v. United States, 4 F.3d 1227, 1241 (3d Cir. 1993). "[A]n agency cannot justify withholding an entire document simply by showing that it contains some exempt material." Abdelfattah v. U.S. Dep't of Homeland Sec., 488 F.3d 178, 186 (3d Cir. 2007) (internal quotations omitted).

Summary judgment is appropriate in a FOIA action if the agency's affidavits "describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Carp v. I.R.S., No. 00-5992, 2002 WL 373448, at *4 (D.N.J. Jan. 28, 2002).

### 1. Exemption 6

Exemption 6 of FOIA permits the government to withhold all information in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Information falling within the scope of Exemption 6 must qualify as a personnel file, medical file or "similar file[]." See id. This is a broad category that extends to all information that "applies to a

5

particular individual." U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982) (holding that Exemption 6 "[was] intended to cover detailed Government records on an individual which can be identified as applying to that individual.").

If the information sought satisfies this threshold requirement, the Court must then determine whether its release would constitute a clearly unwarranted invasion of personal privacy. Arieff v. U.S. Dep't of Navy, 712 F.2d 1462, 1466 (D.C. Cir. 1983). "[T]he balance to be drawn under Exemption 6's 'clearly unwarranted invasion of personal privacy' clause is one between the protection of an individual's private affairs from [u]nnecessary public scrutiny, and the preservation of the public's right to governmental information." Dep't of Air Force v. Rose, 425 U.S. 352, 381 n.19 (1976) (internal quotations omitted). As there is a strong presumption in favor of disclosure under FOIA, the government faces a heavy burden when withholding information under Exemption 6. See Citizens for Envtl. Quality, Inc. v. U.S. Dep't of Agric., 602 F.Supp. 534, 538 (D.D.C. 1984). The government may overcome this presumption of disclosure by: (1) "show[ing] that the public would be able to link the disclosures requested by plaintiff with the subject of the [documents];" or (2) "controvert[ing] plaintiff's assertion of the public's interest in the documents sought." See id. at 538, 540.

### 2. Exemption 7

In pertinent part, Exemption 7(C) and (E) state:

> This section does not apply to matters that are . . . records or information compiled for law enforcement purposes, but only to the . . . extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law

      enforcement investigations or prosecutions if such disclosure could reasonably
      be expected to risk circumvention of the law, . . . .

5 U.S.C. § 552(b)(7)(C), (E).

The Third Circuit employs a "rational nexus" test in determining whether the requested documents qualify as "records or information compiled for law enforcement purposes." See Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1054 (3d Cir. 1995). To fall within the scope of Exemption 7, the agency must identify the particular individual who is the subject of the investigation and support the connection between that individual and the potential violation of law or security risk with information "sufficient to support at least a colorable claim of its rationality." See Carp, 2002 WL 373448, at *4 (internal quotations and citation omitted).

        **a.**      **Exemption 7(C)**

Exemption 7(C) seeks to "protect against disclosure of personal information of third parties." Berger v. I.R.S., 487 F.Supp.2d 482, 501 (D.N.J. 2007), aff'd, 288 Fed.Appx. 829 (3d Cir. 2008). To evaluate a claim made pursuant to Exemption 7(C), a court must balance the public interest in the disclosure of third-party information with the privacy interest of those third parties. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776 (1989). Courts have held the following circumstances represent a "substantial privacy interest" in which redaction is justified: (1) names and addresses of private individuals which appear in the investigative files of government agencies unless that information is necessary to confirm or refute compelling evidence of agency misconduct; and (2) the identity of law enforcement officers, interviewees, suspects, and witnesses involved in

7

criminal investigations "because disclosure may result in embarrassment and harassment." McDonnell, 4 F.3d at 1255; see also Safecard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (awarding summary judgment in favor of agency because witnesses and customers have a substantial privacy interest in their identifying information); cf. Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1166–67 (3d Cir. 1995) (internal quotations omitted) ("Absent proof of misconduct, which is needed to justify invading the demonstrable privacy interests involved here, we need not linger over the balance because something . . . outweighs nothing every time.").

### b.     Exemption 7(E)

Exemption 7(E) applies to law enforcement records, which, if disclosed, would risk circumvention of the law. See 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) cannot be asserted to justify the withholding of "routine techniques and procedures already well-known to the public, such as ballistic tests, fingerprinting, and other scientific tests commonly known." Davin, 60 F.3d at 1064 (quotations and citation omitted). An agency's burden in asserting Exemption 7(E) is relatively low because, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Qatanani v. Dep't of Justice, No. 12-4042, 2015 WL 1472227, at *14 (D.N.J. Mar. 31, 2015).

Exemption 7(E) has been held to apply to: (1) "database codes and case organization descriptions" (2) "polygraph information documents"; (3) FBI forms that reveal "investigative techniques and procedures"; and (4) IRS documents that "expos[e] specific, non-routine

8

investigative techniques used by the IRS to uncover tax fraud." See, e.g., Frankenberry v. F.B.I., 567 Fed.Appx. 120, 125 (3d Cir. 2014); Qatanani, 2015 WL 1472227, at *14; Am. Civil Liberties Union of N.J. v. Dep't of Justice, No. 11-2553, 2012 WL 4660515, at *10 (D.N.J. Oct. 2, 2012), aff'd, 733 F.3d 526 (3d Cir. 2013); Carp, 2002 WL 373448, at *6. The variety of documents withheld under Exemption 7(E) illustrates the low burden that the government faces in proving that disclosure of a requested document may risk circumvention of the law. See 5 U.S.C. §§ 552(b)(7)(E).

### 3. *In Camera* Review

FOIA permits a district court to examine *in camera* the contents of agency records that have been withheld. See 5 U.S.C. § 552(a)(4)(B). The decision to review the withheld contents of an agency's records is within the discretion of the court. See Hinton v. Dep't of Justice, 844 F.2d 126, 128 (3d Cir. 1988). Agency affidavits submitted in justification of the FOIA exemptions carry a presumption of good faith; thus, *in camera* review should not be resorted to "routinely" and is unnecessary if agency affidavits are specific and there is no evidence of bad faith. See Berger, 487 F.Supp.2d at 494.

## II. ANALYSIS

### A. *In Camera* Review of Redacted Documents is Not Appropriate in this Case

This Court will not require *in camera* review of CBP's redacted documents because we are satisfied with the specificity of the affidavit submitted by CBP in justification of the redactions (hereinafter, the "Suzuki affidavit"). See Carp, 2002 WL 373448, at *4. Furthermore, Plaintiff has not asserted any bad faith on the part of CBP so as to overcome the presumption of good faith accorded to the Suzuki affidavit. See Berger, 487 F.Supp.2d at

494. As will be discussed further below, the Suzuki affidavit is sufficiently detailed regarding the nature of the withheld documents and the asserted basis for the applicable exemptions such that *in camera* review is not appropriate.  See id.

      **B.**      **Records Withheld Pursuant to FOIA Exemptions 6 and 7(C)[3]**

CBP has withheld the following portions of the records under Exemptions 6 and 7(C): (1) part of the comment list titled "User ID;" and (2) parts of the risk assessment worksheet titled "Supporting Information" and "Director."  (See dkt. 11-4 at 10, 13–14.)  CBP invokes Exemptions 6 and 7(C) to protect "terminal identifier numbers of the Government personnel performing the search for responsive documents," "identities and phone numbers of individual employees who were responsible for maintaining certain records," and "user ID's of CBP personnel who performed actions or processed transactions in the GES ["Global Enrollment System"] pertaining to the records."  (See dkt. 11-2 at 6.)  For the reasons explained below, the Court finds that CBP properly redacted these portions of the documents under Exemptions 6 and 7(C).

CBP argues that its agency employees have a privacy interest in their names and contact information, which is heightened due to "the general nature of law enforcement work."  (See dkt. 11-7 at 16.)  CBP also notes that "disclosure of this identifying information would serve no meaningful public purpose because the release of the personnel's identities would shed no light on the Government's execution of its statutory duties."  (Id.)  Thus, when weighing the substantial privacy interests of agency employees' identifying information

---

[3] CBP has applied these exemptions in tandem and the Court will analyze them as such.  (See dkt. 11-7 at 20.)

against the minimal public interest in disclosure of such information, CBP argues that disclosure would result in a "clearly unwarranted invasion of personal privacy." (See id. at 15.)

With respect to Exemption 6, the Court finds, as a threshold matter, that CBP's records fall within the scope of "similar files" that warrant protection under Exemption 6. See Wash. Post Co., 456 U.S. at 602. The Supreme Court intended for Exemption 6 to cover a broad range of files. See id. Moreover, the records in this case include CBP personnel information that, if disclosed, would reveal information such as the employees who conducted the records search and the director who reviewed the records. (See dkt. 11-4 at 14.) While FOIA encourages an open and transparent government, we find that disclosure of terminal identifiers and employee names and phone numbers amounts to a "clearly unwarranted invasion of personal privacy" that provides little insight to the public as to why CBP revoked Plaintiff's membership in the global traveler program, or how CBP responds to such inquiries generally. See Rose, 425 U.S. at 381 n.19.

It is for this same reason that the Court finds that the information was properly withheld under Exemption 7(C).[4] As noted above, CBP employees have a "substantial privacy interest" in identifying information. See Reporters Comm. for Freedom of the Press,

---

[4] The documents at issue in this case fall within protection of Exemption 7, as they were compiled for law enforcement purposes and survive the Third Circuit's rational nexus test. See Davin, 60 F.3d at 1054; see also Carp, 2002 WL 373448, at *4–5. The Suzuki affidavit identifies Plaintiff as the subject of the records, and connects Plaintiff, with sufficient evidence, to the agency's records that identify Plaintiff by personal information such as employment and residence. See Carp, 2002 WL 373448, at *5. The records also connect Plaintiff with a potential violation of the law or security risk, due to the adverse action taken by CBP in revoking Plaintiff's membership in the global traveler program. (See dkt. 11-4 at 9.) See also Carp, 2002 WL 373448, at *5.

489 U.S. at 776. We are not convinced that the public's interest in such information outweighs CBP employees' privacy interests. Moreover, Plaintiff has provided no evidence of misconduct so as to override the presumption of good faith afforded to the Suzuki affidavit submitted in support of its redactions under Exemptions 6 and 7(C). See Manna, 51 F.3d. at 1166–67 (requiring showing of bad faith to justify invading "demonstrable privacy interests" and disclosing withheld information under Exemption 7(C)).

### C.  Records Withheld Pursuant to FOIA Exemption 7(E)

CBP has withheld the following under Exemption 7(E): (1) the lower left-hand corner of all pages of the biographic summary, request list, comment list, and risk assessment worksheet; (2) a portion of the comment list under "Comment"; and (3) portions of the Risk Assessment Worksheet that included "Query Results," "Findings," and "Supporting Information." (See generally dkt. 11-4.) CBP invokes Exemption 7(E) to protect "information that would reveal how queries were conducted in specific law enforcement databases and the results of those queries." (See dkt. 11-7 at 21.) For the reasons explained below, the Court finds that CBP properly redacted parts of the documents under Exemption 7(E).

CBP argues that disclosure of the information used to render decisions regarding eligibility for the global traveler program "could adversely affect future investigations by giving potential subjects of investigations the ability to anticipate the circumstances under which such techniques could be employed in investigations where they may be targets . . . ." (Dkt. 11-7 at 22; see also dkt. 11-2 at 7–9.) CBP also asserts that much of the redacted information is derived from the TECS system, which courts have routinely held as exempt

12

from disclosure under Exemption 7(E).[5]  See, e.g., Miller v. U.S. Dep't of Justice, 872 F.Supp.2d 12, 29 (D.D.C. 2012) (upholding non-disclosure of the TECS system and access codes on the ground that "disclosing [them] would expose a law enforcement technique, promote circumvention of the law by allowing criminals to conceal their activity, or allow fraudulent access to DEA's databases"); Strunk v. U.S. Dep't of State, 905 F.Supp.2d 142, 148 (D.D.C. 2012) ("The CBP thus demonstrates that its decision to withhold the TECS-related information under Exemption 7(E) is proper.").

      The Court finds that CBP properly redacted the law enforcement-sensitive information contained in the Risk Assessment Worksheet.  The Suzuki affidavit provides sufficient details regarding the information redacted, noting that it involved "queries . . . conducted in specific law enforcement databases and the results of those queries."  (See dkt. 11-2 at 7.)  The affidavit states that this information could be used to circumvent the law by allowing individuals to "alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures thus corrupting the integrity of ongoing and future investigations."  (See id.)  The Court concludes that CBP properly redacted the law enforcement sensitive information because the agency logically demonstrated "how the release of the requested information might create a risk of circumvention of the law." Qatanani, 2015 WL 1472227, at *14.

---

[5] The TECS system (not an acronym), is an information-sharing platform that is owned and managed by CBP.  (See dkt. 11-2 at 7.)  The TECS system enables interaction and data-sharing between various federal agencies and aids law enforcement in border screening and inspections.  (See id.)

The Court also finds that CBP properly withheld the information gathered from the TECS system under Exemption 7(E).  The Suzuki affidavit details with great specificity the volume and sensitivity of the data that is collected by the TECS system.  (See dkt. 11-2 at 7–8.)  The affidavit further detailed the importance of protecting the TECS system from security risks because of its role as a "fundamental law enforcement tool" that aids in "assisting CBP to meet its primary mission to prevent terrorists, their weapons, and other dangerous items from entering the United States."  (See id. at 8.)  Thus, the records were properly redacted under Exemption 7(E) as the information was gathered using the TECS system.

## CONCLUSION

For the above-stated reasons, the Court finds that CBP properly redacted the records related to Plaintiff's FOIA request under Exemptions 6, 7(C), and 7(E).  The Court will accordingly grant Defendant's motion for summary judgment and enter judgment in favor of Defendant.  The Court will issue an appropriate order and judgment.

   s/ Mary L. Cooper  
**MARY L. COOPER**  
United States District Judge

**Dated:**  January 27, 2016